CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

OCT 15 2010

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| ZURICH AMERICAN INSURANCE COMPANY, | )<br>)<br>) |
| Plaintiff, | )<br>)<br>) |
| v. | ) Civil Action No. 7:10-cv-282 <br> ) |
| TOBY L. TURBYFILL | ) **MEMORANDUM OPINION** <br> ) |
| and | ) By: Hon. Glen E. Conrad <br> ) Chief United States District Judge |
| DAVID NEUENSCHWANDER, | )<br>) |
| Defendants. | ) |

The plaintiff, Zurich American Insurance Company ("Zurich" or the "plaintiff"), filed this diversity action against two of its former employees, Toby L. Turbyfill and David Neuenschwander (collectively, the "defendants"), alleging various state law claims against them in connection with their resignation from Zurich and subsequent embarkation on a competing enterprise. This case is now before the court on Neuenschwander's motion to dismiss the claims against him. For the reasons set forth below, Neuenschwander's motion to dismiss will be granted.

I.  **Factual and Procedural Background**

The following facts are presented in the light most favorable to the plaintiff. See Erickson v. Pardus, 551 U.S. 89, 94 (2007).

Zurich is a financial services company that conducts business throughout the United States and specializes in insurance and insurance-related products, particularly for automobile dealers. In late 2007, Turbyfill and Neuenschwander were employed by Zurich—the former as a

Finance and Insurance Executive and the latter as a Regional Sales Manager.

On February 13, 2008, Turbyfill entered into an Employment Agreement with Zurich, which specified that, for a period of one year following Turbyfill's employment with Zurich, Turbyfill would not compete with Zurich by engaging in the insurance business or inducing anyone to terminate their insurance relationship with Zurich. Turbyfill also agreed not to disclose Zurich's trade secret information to anyone without Zurich's written consent. The plaintiffs have alleged neither that Neuenschwander entered into any similar non-compete agreement with Zurich, nor that Neuenschwander had any knowledge of the Employment Agreement between Turbyfill and Zurich.

In their employment capacities, both defendants sold and managed Zurich customer accounts for large, multi-state customers who had contracted to purchase insurance-related products through Zurich (the "customer contracts"). The defendants had access to extensive data and proprietary information regarding the customers to whom they were assigned and were both aware of Zurich's pricing and competitive strategies, customer lists, sales histories, and profitability calculations for these customers. The defendants also established goodwill through their personal contact with these customers.

One of the customer accounts that Turbyfill was given the opportunity to develop was the Ramey Automotive ("Ramey") account. Turbyfill was Zurich's primary contact in all territories in which Ramey conducted business, but Neuenschwander also knew that Ramey was in a contractual relationship with Zurich. Even though Zurich's contract with Ramey was terminable at-will, Zurich alleges that it has a business expectancy with a probability of future economic benefit in its contractual relationships with each of its customers, including Ramey.

Neuenschwander voluntarily resigned on July 31, 2009. Turbyfill voluntarily resigned on August 6, 2009. Immediately after his resignation, Turbyfill began soliciting Zurich customers, including the Ramey account, on behalf of himself and Neuenschwander, who was allegedly his business partner at the time. In August 2009, Ramey stopped purchasing insurance-related products from Zurich and began purchasing them through a new business entity that was affiliated with Turbyfill. A January 2010 memo signed by Ramey's Vice President of Operations announced that Ramey was now in "partnership" with Turbyfill and Neuenschwander and would cease purchasing its insurance-related products from Zurich. Zurich alleges that, but for Turbyfill's conduct, there is a reasonable certainty that Ramey would have continued to purchase its insurance-related products from Zurich. Zurich also claims that the defendants interfered or attempted to interfere with several other of its customer contracts.

On June 25, 2010, Zurich filed a complaint in this court, invoking diversity jurisdiction and alleging that Turbyfill's conduct violated the restrictive covenants and trade secret covenants of his Employment Agreement, that he tortiously interfered with Zurich's customer contracts, and that he conspired or attempted to conspire with Neuenschwander and a related business entity to violate the Employment Agreement and/or interfere with Zurich's customer contracts. Against Neuenschwander, Zurich has alleged only three claims: intentional interference with Zurich's existing contractual relationships (Count III), and statutory conspiracy and attempted statutory conspiracy under Virginia Code §§ 18.2-499(A) and (B) to breach the Employment Agreement and to intentionally interfere with Zurich's customer contracts (Counts IV and V).

On July 22, 2010, Neuenschwander filed a motion to dismiss each of the three claims against him for failure to state a claim upon which relief can be granted, pursuant to Federal Rule

3

of Civil Procedure 12(b)(6).

## II. Standard of Review

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint." Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," viewing the complaint in the light most favorable to the plaintiff. Erickson, 551 U.S. at 94 (citations omitted); see also De Sole v. United States, 947 F.2d 1169, 1171 (4th Cir. 1991). Still, the complaint must contain sufficient factual allegations that, when accepted as true, the complaint "state[s] a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. ___, 129 S. Ct. 1937, 1949 (2009). Consequently, a complaint consisting of bare legal conclusions is insufficient to survive a motion to dismiss. Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," a pleading that merely offers "labels and conclusions," or "a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. Likewise, "a complaint [will not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement,'" or if it consists of "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Iqbal, 556 U.S. at ___, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 557).

Moreover, where a complaint does contain well-pleaded facts, those facts must permit the court to infer, "draw[ing] on its judicial experience and common sense," "more than the mere

4

possibility of misconduct"; if they do not, "the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at ___, 129 S. Ct. at 1950 (citing FED. R. CIV. P. 8(a)(2)). Accordingly, a court that is considering a motion to dismiss may

> choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief.

Iqbal, 556 U.S. at ___, 129 S. Ct. at 1950.

### III. Discussion

#### A. Tortious Interference with Zurich's Contractual Relationships

Count III alleges against Neuenschwander a claim of tortious interference with Zurich's customer contracts. To state a claim under Virginia law for tortious interference with a contract that is not terminable at will, a plaintiff must establish the following:

> 1) the existence of a valid contractual relationship or business expectancy; 2) knowledge of the relationship or expectancy on the part of the interferor; 3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and 4) resultant damage to the party whose relationship or expectancy has been disrupted.

Skillstorm, Inc. v. Electronic Data Systems, LLC, 666 F. Supp. 2d 610, 616 (E.D. Va. 2009) (quoting Duggin v. Adams, 360 S.E.2d 832, 835 (Va. 1987)). However, "when a contract is terminable at will, a plaintiff, in order to present a prima facie case of tortious interference, must allege and prove not only an intentional interference that caused the termination of the at-will contract, but also that the defendant employed improper methods" to cause the interference. Duggin, 360 S.E.2d at 836 (emphasis in original). The additional requirement is necessary

5

because "an individual's interest in a contract terminable at will is essentially only an expectancy of future economic gain, and he has no legal assurance that he will realize the expected gain." Id.

Neuenschwander argues that Zurich's complaint fails to allege that he used "improper methods" to interfere with its customer contracts. The Supreme Court of Virginia has clarified that

> [m]ethods of interference considered improper are those means that are illegal or independently tortious, such as violations of statutes, regulations, or recognized common-law rules. Improper methods may include violence, threats or intimidation, bribery, unfounded litigation, fraud, misrepresentation or deceit, defamation, duress, undue influence, misuse of inside or confidential information, or breach of a fiduciary relationship.

Duggin, 360 S.E.2d at 836 (citation omitted). Moreover, a method may be "improper under the circumstances" even if it is not independently tortious or illegal. Maximus, Inc. v. Lockheed Information Management Systems Co., Inc., 493 S.E.2d 375, 379 (Va. 1997). "Methods also may be improper because they violate an established standard of a trade or profession, or involve unethical conduct. Sharp dealing, overreaching, or unfair competition may also constitute improper methods." Duggin, 360 S.E.2d at 837 (citations omitted).

In its memorandum in opposition to the motion to dismiss and at oral argument, Zurich asserted that Neuenschwander engaged in the following improper methods to interfere with Zurich's customer contracts: (1) engaging in "unlawful competition" against Zurich in violation of "legal obligations" (Compl. ¶ 7); (2) conspiring or attempting to conspire with Turbyfill to violate Turbyfill's Employment Agreement (Compl. ¶ 25); (3) conspiring or attempting to conspire with Turbyfill to interfere with Zurich's customer contracts (Compl. ¶ 25); and (4) using "improper methods" to interfere with Zurich's customer contracts, including the breach of

Turbyfill's Employment Agreement with Zurich. (Compl. ¶ 41.)

The court is constrained to conclude, however, that Zurich's complaint fails to sufficiently allege that Neuenschwander engaged in any improper methods. At the outset, the court concludes that Zurich's allegation that Neuenschwander engaged in "unlawful competition" in violation of "legal obligations" is insufficient to support Zurich's tortious interference claim, because it is legally conclusory. See Iqbal, 556 U.S. at ___, 129 S. Ct. at 1950.

Moreover, as explained in Part III.B, infra, Zurich's complaint fails to state a claim either for conspiracy or for attempted conspiracy. Thus, neither the second nor the third of Zurich's asserted allegations are sufficient to plead improper methods.[1]

The same is true with respect to Zurich's fourth allegation—the bare statement that Neuenschwander used "improper methods" to interfere with Zurich's customer contracts cannot, without more, suffice to plead that his methods were improper. See Iqbal, 556 U.S. at ___, 129 S. Ct. at 1950. Moreover, to the extent that Zurich relies on the breach of Turbyfill's Employment Agreement as constituting the improper methods necessary for the survival of its tortious interference claim, its argument must fail. Clearly, a defendant's breach of a non-competition agreement may constitute the improper method necessary to support a claim for tortious interference. See Hilb, Rogal and Hamilton Co. of Richmond v. DePew, 440 S.E.2d 918, 922 (Va. 1994). But the complaint does not allege that Neuenschwander was restricted by any such covenant. Nor does the complaint allege that Neuenschwander even knew that Turbyfill's Employment Agreement existed or that it contained a non-compete clause that restricted Turbyfill's competitive activity. Even if the complaint had made these allegations, holding that

---

[1] See also infra note 3.

the mere encouragement for someone else to breach a non-compete clause was an "improper method" sufficient to support a tortious interference claim would confound the Virginia Supreme Court's repeated attempts to "prevent 'turning every breach of contract into an actionable [tort] claim.'" Station #2, LLC v. Lynch, 695 S.E.2d 537, 541 (Va. 2010). Thus, the mere fact that Turbyfill breached his Employment Agreement is insufficient to show that Neuenschwander used improper methods to interfere with Zurich's contracts.

To be sure, a tortious interference claim could be supported in the instant case by an allegation that Neuenschwander "misuse[d] . . . inside or confidential information, or breach[ed] . . . a fiduciary relationship"—either of which may constitute "improper methods" under Virginia law. Duggin, 360 S.E.2d at 836. After all, under the common law, "an employee, including an employee-at-will, owes a fiduciary duty of loyalty to his employer during his employment." Williams v. Dominion Tech. Partners, LLC, 576 S.E.2d 752, 757 (Va. 2003). The duty of loyalty imposes upon the employee "the more specific duty that the employee not compete with his employer during his employment." Id. "Principally, an employee must not have misappropriated trade secrets, misused confidential information, [or] solicited an employer's clients or other employees prior to termination of employment." Id. at 758. In Virginia, while the common law duty not to compete ceases at the termination of employment, see Hilb, 440 S.E.2d at 922, the prohibition against using confidential employer information continues to apply even after the conclusion of the employment relationship. See International Paper Co. v. Gilliam, 63 Va. Cir. 485, 2003 WL 23573613, at *5 (Va. Cir. Ct. 2003). As the Supreme Court of Virginia has held, after the termination of the employment relationship, the employee or agent "has a duty to the principal not to use or to disclose to third persons, on his own account or on account of others, in

competition with the principal or to his injury, trade secrets, written lists of names, or other similar confidential matters given to him only for the principal's use or acquired by the agent in violation of duty." Peace v. Conway, 435 S.E.2d 133, 135 (Va. 1993) (quoting the RESTATEMENT (SECOND) OF AGENCY § 396 (1958)).[2]

In the instant case, however, Zurich has made no such allegation as to the defendant Neuenschwander. Certainly, Zurich claims that both Turbyfill and Neuenschwander "had access to extensive data regarding Zurich's customers, particularly those to which they were assigned, including information about customer requirements and needs, pricing, policy expiration dates, margins, the loss experience and profitability of each customer, and other proprietary information." (Compl. at ¶ 16.) Zurich also alleges that, throughout Neuenschwander's employment, it provided him with "access to the trade secret information referenced above in addition to its customer lists, sales histories, and business methods." (Compl. at ¶ 18.) Neuenschwander also allegedly "knew that information regarding Zurich's [customer] accounts was confidential, proprietary and trade secret information, and was not to be revealed to others outside Zurich, and that it was a valuable commercial asset of Zurich." (Compl. at ¶ 15.)

Nevertheless, the complaint fails to allege that Neuenschwander actually used any of this information to intentionally interfere with Zurich's customer contracts or to cause them to be breached or terminated. The complaint alleges only that Turbyfill solicited Zurich's customers on

---

[2] The court notes, however, that the former employee "is entitled to use general information concerning the method of business of the principal and the names of the customers retained in his memory, if not acquired in violation of his duty as agent." Peace, 435 S.E.2d at 135 (holding that two former employees did not violate their duty of loyalty to their former employer when they did not take any written customer lists from the employer and instead compiled customer lists using their memories). See also Phoenix Renovation Corp. v. Rodriguez, 461 F. Supp. 2d 411, 426 (E.D. Va. 2006) (applying Peace to determine that former employees were not liable for using any proprietary information where they had relied on their memories to establish compensation rates and marketing rates for their competing enterprise), aff'd 258 Fed. App'x 526, 538 (4th Cir. 2007) (unpublished).

behalf of the defendants and that Turbyfill "intends to continue his unlawful activities." (Compl. at ¶¶ 21, 25.) Nowhere is it alleged that Neuenschwander even contacted any of Zurich's customers, much less used the proprietary information in his possession to solicit their business. Accordingly, even taking the allegations in the light most favorable to Zurich, the court cannot conclude that Zurich has alleged that Neuenschwander—even if he possessed proprietary information—actually used it to interfere with Zurich's customer contracts. See Bay Tobacco, LLC v. Bell Quality Tobacco Products, LLC, 261 F. Supp. 2d 483, 500 (E.D. Va. 2003) ("[A]lthough the Court accepts Plaintiff's factual allegations as true, the Court will not assume that [Plaintiff] can prove facts that are not alleged."). As a result, Zurich's complaint does not sufficiently allege improper methods. See Duggin, 360 S.E.2d at 836. Because of this deficiency in Zurich's complaint, Neuenschwander's motion to dismiss the tortious interference claim levied against him must be granted.

B. Statutory Conspiracy

Counts IV and V assert against Neuenschwander claims of statutory conspiracy and statutory attempted conspiracy, respectively. Virginia Code § 18.2-500 allows plaintiffs to sue for (treble) civil damages for violations of the business conspiracy statute, Code § 18.2-499. Section 18.2-499 imposes liability upon "two or more persons who combine, associate, agree, mutually undertake or concert together for the purpose of willfully and maliciously injuring another in his reputation, trade, business or profession by any means whatever." VA. CODE § 18.2-499(A). To prevail upon a claim for statutory conspiracy under Code §§ 18.2-499 and -500, a plaintiff must also show that it has suffered causally-related damage. See Skillstorm, 666 F. Supp. 2d at 618; Allen Realty Corp. v. Holbert, 318 S.E.2d 592, 596 (Va. 1984). In addition, the plaintiff must

prove that the "conspirators acted with legal malice[;] that is, proof that the defendant acted intentionally, purposefully, and without lawful justification." Simmons v. Miller, 544 S.E.2d 666, 677 (Va. 2001). Finally, "[t]here can be no conspiracy to do an act which the law allows." Hechler Chevrolet, Inc. v. General Motors Corp., 337 S.E.2d 744, 748 (Va. 1985). Consequently, "[t]o survive demurrer, an allegation of conspiracy, whether criminal or civil, must at least allege an unlawful act or an unlawful purpose." Station #2, LLC v. Lynch, 695 S.E.2d 537, 541 (Va. 2010) (citation omitted).

Neuenschwander relies heavily upon the Virginia Supreme Court's recent decision in Station #2 for his assertion that Zurich has failed to sufficiently state a claim of conspiracy against him. In Station #2, the Court held that, because "the duty of performance under the contract springs solely from the agreement" rather than being imposed by statute or common law, the nonperformance of a contractual obligation is not an "unlawful act" that supports a recovery for conspiracy under Virginia Code § 18.2-500. Station #2, 695 S.E.2d at 541. Thus, "a conspiracy merely to breach a contract that does not involve an independent duty arising outside the contract is insufficient to establish a civil claim under Code § 18.2-500." Id. Accordingly, under Station #2, Zurich cannot state a statutory conspiracy claim merely by asserting that the defendants conspired to breach the terms of Turbyfill's Employment Agreement.

Zurich maintains, however, that the complaint alleges the following unlawful acts in addition to the breach of Turbyfill's Employment Agreement: (1) the defendants' unlawful competition in violation of legal obligations to Zurich (Compl. at ¶ 7); (2) the defendants' conspiracy to misappropriate trade secrets (Compl. at ¶¶ 25, 45); and (3) the defendants' tortious interference with Zurich's customer contracts (Compl. at ¶¶ 25, 45).

11

Again, Zurich's allegation that Neuenschwander engaged in "unlawful competition" in violation of "legal obligations" is insufficient to support Zurich's conspiracy claim, because it is legally conclusory. See Iqbal, 556 U.S. at ___, 129 S. Ct. at 1950. Likewise, Zurich's argument that the defendants' unlawful act involved the misappropriation of trade secrets cannot stand. Although Zurich argues on brief that the misappropriation of trade secrets is a common law violation as well as a statutory violation of the Virginia Uniform Trade Secrets Act, the complaint itself makes no mention of either legal theory. The complaint alleges only that the defendants conspired to misappropriate Zurich's trade secrets in violation of Turbyfill's Employment Agreement: "Defendants have . . . conspired and acted in concert together and with their affiliated business entity to breach Turbyfill's Employment Agreement, including the restrictive and trade secret covenants." See Compl. at ¶ 45; id. at ¶ 25. Zurich has not alleged in any way that the defendants' conspiracy to misappropriate trade secrets involved a violation of any duty imposed upon them by either the common law or a statutory provision. Instead, the complaint alleges only that the defendants' conspired to misappropriate trade secrets in violation of a contractual duty imposed upon Turbyfill. As Station #2 held, however, this allegation is insufficient to support a claim for conspiracy under Code § 18.2-500.

Finally, supporting a conspiracy claim with an allegation of tortious interference not only runs the risk of contravening the Virginia courts' long-standing distaste for "turning every breach of contract into an actionable [tort] claim," Station #2, 695 S.E.2d at 541, but is also unavailable to Zurich in the case at bar, given that it has failed to state a claim against Neuenschwander for

tortious interference with Zurich's customer contracts.[3] Given that the plaintiff has not sufficiently alleged that the defendants conspired to breach any duty independent of the Employment Agreement, the court concludes that Station #2 controls the result in this case.

Moreover, to prove a claim for conspiracy, the plaintiff must adequately show that the defendants "combined together to effect a preconceived plan and unity of design and purpose." Bay Tobacco, LLC v. Bell Quality Tobacco Prods., LLC, 261 F. Supp. 2d 483, 499 (E.D.Va. 2003) (internal quotation marks omitted). "To survive a motion to dismiss, then, a plaintiff must at least plead the requisite concert of action and unity of purpose." Schlegel v. Bank of Am., N.A., 505 F. Supp. 2d 321, 326 (W.D. Va. 2007) (Moon, J.) (citation omitted).

According to Zurich, "a conspiracy may be established if the conduct of the parties and the inferences to be drawn from such conduct indicate, at least, a 'tacit understanding' to accomplish the object of the alleged conspiracy." Garrett v. Langley Federal Credit Union, 121 F. Supp. 2d 887, 906 (E.D. Va. 2000) (analogizing to the criminal context and citing Wallace v. United States, 281 F.2d 656, 663 (4th Cir. 1960)). Accordingly, Zurich points to its allegations supporting an inference of concerted activity between Turbyfill and Neuenschwander; namely, that the defendants resigned their employment within a week of each other, that Turbyfill immediately thereafter began soliciting Zurich's current customers, that Ramey issued an internal memorandum stating that the defendants were business partners, and that Ramey subsequently

---

[3]Clearly, the court would be engaging in circular logic if it held that Zurich's conspiracy claim was supported by its allegations of tortious interference, when the tortious interference claim—given Zurich's failure to plead a breach of fiduciary duty as an "improper method"—could be supported only by an allegation of conspiracy. See supra Part III.A. Although Zurich suggested at oral argument that the tortious interference claim could be supported by the "improper method" of a common law conspiracy, not only is the court unconvinced that the analysis of Station #2 does not apply to common law conspiracy claims, but the complaint has not in any way alleged that Neuenschwander and Turbyfill engaged in a common law conspiracy.

13

discontinued its relationship with Zurich in favor of a business relationship with Turbyfill and Neuenschwander.

The court, however, cannot conclude that these allegations suffice to plead a conspiracy under Virginia law. "Virginia case law provides little guidance as to the proper pleading of concerted action." <u>Atlantic Futon v. Tempur-Pedic, Inc.</u>, 67 Va. Cir. 269, 269 (Va. Cir. Ct. 2005). However, "it is the very nature of a conspiracy that two people agree together on some purpose." <u>Schlegel</u>, 505 F. Supp. 2d at 326 n. 4. <u>See</u> also <u>Floyd v. Commonwealth</u>, 249 S.E.2d 171, 174 (1978) ("There can be no conspiracy without an agreement."). As has been made clear in analogous contexts, a showing of parallel conduct does not by itself establish that two parties have agreed to engage in that conduct. <u>Cf.</u> <u>Twombly</u>, 550 U.S. at 556-57 ("Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality."). In fact, courts which have applied Virginia law in this context have stressed that "[a] plaintiff must support its business conspiracy claim with more than conclusory allegations." <u>Skillstorm</u>, 666 F. Supp. 2d at 618. <u>See also</u> <u>Government Employees Ins. Co. v. Google, Inc.</u>, 330 F. Supp. 2d 700, 706 (E.D. Va. 2004) ("[B]usiness conspiracy, like fraud, must be pleaded with particularity, and with more than mere conclusory language. The heightened pleading standard prevents every business dispute over unfair competition becoming a business conspiracy claim.") (citation omitted). Thus, to sufficiently plead a conspiracy claim, the plaintiff's allegations must include "some details of time and place and the alleged effect of the conspiracy." <u>Johnson v. Kaugars</u>, 14 Va. Cir. 172, 1988 WL 619378, at *3 (Va. Cir. Ct. 1988).

Consonant with these principles, the Virginia Supreme Court held in <u>Simmons v. Miller</u>,

14

544 S.E.2d 666, 677 (Va. 2001), that the evidence was insufficient to support a finding of concerted action where a client was alleged to have conspired with her lawyer to dissolve one corporation and start another, with the intent to freeze out a minority shareholder of the first corporation. Despite the evidence in that case that showed that the lawyer had drafted documents related to the disputed transaction, listed herself as the registered agent for the new corporation, and edited documents relating to the valuation of the initial corporation, the Court held that there was no concerted action because there was no proof that the lawyer knew that her client was shifting the assets from the first corporation to the second. Id. See also Bowman v. State Bank of Keysville, 331 S.E.2d 797, 802 (Va. 1985).

In this case, Zurich has not alleged the existence of any agreement between Neuenschwander and Turbyfill other than by making a conclusory statement that they agreed and acted in concert "by virtue of the conduct described [in the complaint]" to tortiously interfere with Zurich's contractual relationships and to breach Turbyfill's Employment Agreement. (Compl. at ¶ 45.) With respect to Neuenschwander, Zurich's claims are extremely threadbare. The only factual allegations regarding Neuenschwander in this context are that he resigned his employment a week prior to Turbyfill's resignation, that Turbyfill solicited Zurich customers on behalf of himself and Neuenschwander, and that Ramey referred to Neuenschwander as Turbyfill's partner. Viewing the allegations of Neuenschwander's conduct in the light most favorable to Zurich, the court cannot conclude that Zurich has sufficiently pled an agreement or concerted action. Counts IV and V must therefore be dismissed against Neuenschwander.

Given its finding that Zurich has not sufficiently pled a conspiracy claim against Neuenschwander for the reasons stated above, the court does not reach Neuenschwander's

argument that this claim is barred by the doctrine of intracorporate immunity.

IV. **Conclusion**

For the foregoing reasons, the court will grant Neuenschwander's motion to dismiss each of the claims against him.[4]

The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to all counsel of record.

ENTER: This 15th day of October, 2010.

                                                Chief United States District Judge

---

[4] This dismissal is without prejudice to any motion for leave to file an amended complaint.